# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

KEITH J. PIPPINS, JR.,

               Petitioner,         :    Case No. 2:21-cv-5226

   - vs -                            District Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,

                                        :
               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Keith Pippins pursuant to 28 U.S.C. § 2254 and with the assistance of counsel, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 11) and Petitioner's Traverse (ECF No. 19).

Petitioner's Response to Magistrate Judge Deavers' Order to Show Cause (ECF No. 21) confirms that there are no unexhausted claims in the Petition and the case is ripe for decision. The Magistrate Judge reference has been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 22).

**Litigation History**

On March 13 and May 30, 2014, a Franklin County grand jury returned three indictments charging Petitioner and others with a number of drug-related offenses. The cases were tried jointly.

1

After five days of trial, the jury was not able to agree to a unanimous verdict on all counts and Juror Number 7 asked to speak privately with the trial judge after the jury was polled.  At the conclusion of the sidebar with this juror, the trial court declared a mistrial on Counts 10, 16, 17, 19, 20, 21, 25, 26, 27, 29, 30, 32 and 33 where the jury did not determine a verdict and on any counts where Juror 7 said she did not agree with the verdict on the verdict form.  Pippins was found guilty on the remaining counts except for an acquittal on Count 11.  He was sentenced to an aggregate term of imprisonment of seventy-four years.

Petitioner appealed to the Ohio Tenth District Court of Appeals, raising the following assignments of error:

> 1. Defendant-Appellant was denied due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16, of the Ohio Constitution due to the involvement of the presiding judge in the investigation of the crimes for which he was charged.
>
> 2. Defendant-Appellant's conviction for the offense of engaging in a pattern of corrupt activity in violation of R.C. 2923.32 was not supported by sufficient evidence.
>
> 3. Appellant was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when trial counsel failed to file a motion for severance.
>
> 4. The trial court committed plain error by not declaring a mistrial on all counts of the indictment. (Tr. 4387; Judgment Entry, Feb. 20, 2015)

(Appellant's Amended Brief, State Court Record, ECF 9, Exhibit 16; PageID 136).

The Tenth District overruled the first three assignments of error and sustained the fourth only as to Count 34, remanding the case for correction of that error.  *State v. Pippins,* 2020-Ohio-503, 151 N.E.3d 1150 (Ohio App. 10th Dist. Feb. 13, 2020)(copy at State Court Record, ECF No. 9, Ex. 19).  The Supreme Court of Ohio declined jurisdiction over a further appeal.  *State v.*

*Pippins*, 159 Ohio St.3d 1408 (2020).

On October 1, 2020, and with the assistance of counsel, Petitioner filed an Application for Reopening under Ohio R. App. P. 26(B), pleading that the following assignments of error were omitted because of ineffective assistance of appellate counsel:

> 5[1]. The prosecutor's peremptory strike of an African-American juror on account of her race violated Defendant-Appellant's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
>
> 6. The denial of the joint defense motion to dismiss the corrupt activity count was error that deprived Defendant-Appellant of his rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.
>
> 7. Defense counsel's failure to file a motion to dismiss the corrupt activity count deprived Defendant-Appellant of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States constitution and Article I, Section 10 of the Ohio Constitution.
>
> 8. Defense Counsel's failure to renew his motion for severance of defendants, and his failure to object to the prosecutor's improper vouching tactics, police opinion testimony and community impact testimony, deprived Defendant-Appellant of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> 9. Defense counsel's inattentive and incompetent representation during the jury poll proceedings deprived Defendant-Appellant of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Application to Reopen, State Court Record, ECF 9, Exhibit 24; PageID 397). The Tenth District denied the Application and Petitioner did not perfect an appeal to the Supreme Court of Ohio.

On November 5, 2021, Petitioner filed his Petition in this Court, pleading the following

---

[1] This numbering was chosen by Petitioner to be continuous with the numbering in the direct appeal.

grounds for relief:

**Ground One**: The prosecutor's peremptory strike of an African-American juror for a racially discriminatory purpose deprived Petitioner of his rights under the Equal Protection Clause of the Fourteenth Amendment.

**Supporting Facts**: During jury voir dire, defense counsel raised a *Batson* objection to the trial prosecutor's peremptory strike of an African-American juror. The prosecutor cited the juror's "attitude and body language" and a comment on her juror questionnaire as his justification for the strike. The trial judge ruled that this explanation did not provide an adequate race-neutral reason and sustained the objection. He subsquently [sic] reversed his ruling based on an erroneous belief that the *Batson* decision requires proof of a pattern of racially-motivated strikes. As a consequence, Petitioner was tried before a jury from which members of his race had been purposefully excluded.

**Ground Two:** A defective indictment that failed to sufficiently allege the predicate acts for the corrupt activity count and to provide adequate notice violated Petitioner's rights under the Fourteenth Amendment.

**Supporting Facts:** An indictment charging a defendant with engaging in a pattern of corrupt activity must identify with sufficient particularity the individual incidents that comprise the pattern element of the offense. The corrupt activity count upon which Petitioner was actually tried and convicted did not comply with this requirement. Instead it incorporated by reference incidents of corrupt activity contained in an earlier indictment returned by a different grand jury against a different defendant. As a consequence, in preparing for trial and defending the case, he was left to guess what conduct the prosecution would allege was illegal.

**Ground Three:** The trial judge's acceptance of guilty verdicts of the jury over a juror's complaints of intimidation and confusion deprived Petitioner of his Sixth and Fourteenth Amendment right to a unanimous jury.

**Supporting Facts:** During a poll of the jurors, one of the jurors told the trial judge that she felt others [sic] jurors were attempting to intimidate her. She explained that she had been pressured by jurors on a number of counts, and was confused about, and had doubts, as to other counts. The juror's complaints pervaded the sanctity, reliability and fairness of the entire deliberative process. The trial

judge's count-by-count colloquy with the juror failed to cure the error. As a consequence, Petitioner was convicted of criminal charges upon verdicts rendered by a non-unanimous jury.

**Ground Four:** The trial judge's participation in the investigation of the offenses charged in the indictments deprived Petitioner of his rights under the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts:** The prosecution's case against Petitioner rested in substantial part on telephone conversations that were surreptitiously recorded pursuant to wire interception warrants approved by the common pleas court judge who subsequently presided over Petitioner's jury trial and who sentenced Petitioner. As part of the warrant process, the judge received periodic progress reports that included more than 30 statements that witnesses and informants feared for their safety and more than 50 statements about individuals who did not wish to testify out of concerns for their safety. The trial judge's involvement in the process resulted in actual bias against Petitioner, or an appearance of bias to an objective observer.

**Ground Five:** Petitioner's conviction for engaging in a pattern or corrupt activity was not supported by sufficient evidence of the existence of an enterprise to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.

**Supporting Facts:** The prosecution's case-in-chief consisted of evidence of a diverse group of individuals engaged in drug trafficking and other crimes. Even when viewed in a light most favorable to the prosecution, this evidence was insufficient for a reasonable juror to find beyond a reasonable doubt that Petitioner was a participant in an ongoing association-in-fact with a common purpose to engage in those crimes, separate and apart from the pattern of corrupt activity itself.

**Ground Six:** Petitioner was deprived of his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel.

**Supporting Facts:** Petitioner's [sic] was prejudiced by the following incidents of deficient performance by his attorney during the trial proceedings.

1) Trial counsel should have filed a motion to dismiss the engaging in a pattern of corrupt activity count on grounds that it violated the Presentment Clause of the Ohio Constitution. The count incorporated by reference predicate corrupt acts from an earlier

5

indictment returned by a different grand jury against a different defendant. As a consequence, Petitioner was denied his right under the state constitution to be tried on the same essential facts on which the grand jury found probable cause, and his right under the federal constitution to adequate notice of the charge. There is a reasonable probability that a motion to dismiss on these grounds would have been granted if defense counsel had made the motion.

2) Trial counsel failed to renew a motion for severance of defendants when developments during trial demonstrated that joinder of defendants was prejudicial. In pursuing a "collective punishment" theory of defense, counsel for a co-defendant elicited highly prejudicial opinion testimony from the lead detective and other law enforcement witnesses regarding their strongly-held opinions of Pippins' guilty and his girlfriend's acquiescence in his criminal conduct. Because these opinions would not have been admissible in a separate trial, there is a reasonable probability that a severance would have been granted if defense counsel had renewed the motion at the close of the evidence.

3) Trial counsel failed to object to the prosecutor's eliciting highly prejudicial testimony from the case detectives regarding their opinions of Petitioner's guilt. There is a reasonable probability that the jury's verdicts would have been more favorable to Petitioner if counsel had objected and succeeded in keeping the opinions out of the trial.

4) Trial counsel failed to object to the prosecutor's improper efforts to vouch for the strength of the state's case by eliciting testimony regarding procedures followed by the detectives to obtain the wiretap warrants. This tactic conveyed to the jury that the county prosecutor, the attorney general, and the administrative judge of the common pleas court, approved the application for and issuance of the warrants because they believed, in their professional judgment, that Petitioner was in fact committing the crimes charged in the indictments. There is a reasonable probability that the jury's verdicts would have been more favorable to Petitioner if counsel had objected and succeeded in keeping the vouching testimony out of the trial.

5) Trial counsel failed to object to testimony from the lead detective about the impact of "major drug dealers" on the local

community, a perceived softness of the courts in sentencing lower-degree felony offenders, and the futility of criminally prosecuting low-level drug traffickers and users. These subjects had no relevance to the issues in the guilt phase of the trial. There is a reasonable probability that the jury's verdicts would have been more favorable to Petitioner if counsel had objected and succeeded in keeping the community impact testimony out of the trial.

6) Trial counsel failed to object to the lead detective's interpretation of numerous recorded telephone calls in which Petitioner was a participant. The testimony created substantial risk that the jury would defer to the detective's superior knowledge of the case and past experiences with similar crimes. There is a reasonable probability that the jury's verdicts would have been more favorable to Petitioner if counsel had objected and succeeded in keeping the detective's interpretations of the calls out of the trial.

7) During the poll of the jury, trial counsel failed to move for a mistrial when one juror complained about intimidation by other jurors and revealed her confusion and uncertainty about her verdicts. Counsel did not object to the trial judge's failure to obtain an explicit on the record statement from the juror of her assent to certain guilty verdicts. There is a reasonable probability that the trial judge would have granted a mistrial as to all counts if the request had been made, or at the very least, a mistrial on the counts to which the juror had not explicitly assented.

**Ground Seven** Petitioner was deprived of his Sixth and Fourteenth Amendment right to the effective assistance of appellate counsel.

**Supporting Facts:** The attorney representing Petitioner in the direct appeal from his convictions and sentence rendered deficient performance by failing to raise assignments of error directed to:

1) an Equal Protection Clause violation stemming from the prosecutor's peremptory strike of an African-American juror for a racially discriminatory purpose (as set forth in Ground One of this Petitioner and incorporated herein by reference);

2) a Due Process Clause violation relating to a defective indictment that failed to provide adequate notice to Petitioner of the predicate corrupt acts underlying the engaging a pattern of corrupt activity count (as set forth in Ground Two of this Petition and incorporated herein by reference) and

> 3) a violation of Petitioner's Sixth and Fourteenth Amendment right
> to the effective assistance of trial counsel due to the seven instances
> of deficient performance listed under Ground Six of this Petition
> (and incorporated herein by reference).
>
> Petitioner was prejudiced by appellate counsel's deficient
> performance because there is a reason able probability that he would
> have succeeded on the omitted assignments of error for the reasons
> stated in Grounds One, Two and Six of this Petition, and obtained
> relief in the form of a remand to the trial court for entry of a
> judgment of acquittal as to the engaging in a pattern of corrupt
> activity count and/or a reversal of his conviction and a remand to the
> trial court for a new trial.

(Petition, ECF No. 1).

# Analysis

## Procedural Default

Respondent asserts that all of Petitioner's Grounds for Relief except for the Fifth are barred from merits review by his various procedural defaults in fairly presenting them to the Ohio courts for decision.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an adequate and independent state
> procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521. 527 (2017)).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id.*

9

> Second, a claim is procedurally defaulted where the petitioner failed
> to exhaust state court remedies, and the remedies are no longer
> available at the time the federal petition is filed because of a state
> procedural rule. *Id.*

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent
> state ground, then the petitioner must demonstrate under *Sykes* that
> there was "cause" for him to not follow the procedural rule and that
> he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).  A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

10

As to Grounds for Relief One, Two, Six, and Seven, Respondent asserts they were never presented to the Ohio courts at all (Return, ECF No. 11, PageID 5906).  As to Grounds Two, Three, and Four, Respondent asserts they are procedurally defaulted for failure to make a contemporaneous objection. Moreover, Respondent claims, Petitioner admits that lack of presentation. *Id.*, citing Petition, ECF No. 1, at PageID 16.

Petitioner responds:

> The record discloses that Pippins' trial attorney failed to preserve certain issues for review by pretrial motion and/or contemporaneous objection. His appellate attorney failed to present certain constitutional claims in the direct appeal.

(Traverse, ECF No. 19, PageID 6803).  However, Petitioner argues, these defaults can be excused if they resulted from ineffective assistance of counsel (Traverse, ECF No. 19, PageID 6803, citing *Murray v. Carrier*, 477 U.S. 478, 489-90 (1986)).  But to serve as excusing cause, the ineffectiveness claims must themselves be successfully presented to the state courts just like any other constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Respondent asserts these four claims could all have been adjudicated on the direct appeal record.  Under Ohio law, claims that can be thus adjudicated must be presented on direct appeal or be found barred by *res judicata* from later presentation to the Ohio courts.  *State v. Perry,* 10 Ohio St. 2d 175 (1967).

Petitioner does not assert these claims depend on matter *dehors* the appellate record. Instead, he asserts his failure to do so was caused by ineffective assistance of appellate counsel. He attempted to litigate his ineffective assistance of appellate counsel claims by filing an Application for Reopening under Ohio R. App. P. 26(B).  When that Application was unsuccessful,

he attempted unsuccessfully to obtain review in the Ohio Supreme Court.

In his Traverse, Petitioner offers three reasons why his failure to appeal successfully should not prevent merits review here.  Relying on *Lee v. Kemna,* 534 U.S. 362 (2002), he concedes that "ordinarily, violation of 'firmly established and regularly followed' state rules . . . [—for example, those involved in this case[2]—] will be adequate to foreclose review of a federal claim." (Traverse, ECF No. 19, [*Id.* 6804, quoting *Lee* at 376).  However, the *Lee* Court acknowledged there may be "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.,* citing *Davis v. Wechsler*, 263 U.S. 22, 24 (1923)(Holmes, J.).

The *Lee* exception speaks to **application** of rules in individual cases rather than the rules themselves.  In *Lee* itself it was over-rigid enforcement of rules regulating the form of continuance motions that drew Supreme Court censure, rather than regulation of forms of motions generally. *Lee* relied on *Osborne v. Ohio*, 495 U.S. 103 (1990), where the Ohio courts had been overly rigid in enforcing Ohio's contemporaneous objection rule in a situation where the purpose of that rule – allowing pre-verdict correction of error – had already been served by an earlier objection.

On the other hand, the Sixth Circuit has repeatedly held the contemporaneous objection rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S.

---

[2] These are the words omitted and represented by the ellipsis.

107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010). Following *Lee* and *Osborne, there may*

Insofar as the rule involved here is the 45-day time limit on appealing to the Supreme Court of Ohio, the Sixth Circuit has already held that is an adequate and independent state procedural rule. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004). Lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default. *Bonilla*, *citing Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).

Petitioner's attempted appeal of denial of his 26(B) Application was rejected for failure to include a date-stamped copy of the appellate opinion and judgment entry (Letter from Supreme Court Clerk dated February 16, 2021, Attachment A to Petition, ECF No. 1, PageID 9). Applying the *Maupin* factors, there is no doubt the Ohio Supreme Court has an applicable rule and it was enforced here. Petitioner questions its "adequacy," – i.e. its utility in protecting a valid state interest. However, the rule enables a quick first pass determination of whether the appeal is taken from a final appealable order as opposed to some interlocutory matter. This would be particularly useful with *pro se* litigants. Petitioner knew of the rule. His excuse for not following it is that he asked the prison staff to make copies for him and they "did not process his request in a timely manner" (Petition, ECF No. 1, PageID 7). He gives the Court no corroborating detail such as when he made the request and when the staff responded, nor does he explain why he could not have attached the original.

After his 26(B) appeal was rejected, Petitioner attempted to file a delayed appeal. This was rejected because the Ohio Supreme Court will not entertain a delayed appeal from a 26(B) denial.

Petitioner's counsel points out that the Court rather routinely allows delayed direct appeals and questions whether the distinction supports a valid state interest. The State of course has a strong interest in the finality of criminal convictions. See *Mackey v. United States*, 401 U.S. 667, 690-91 (1971)(Harlan, concurring in the judgment in part). There is nothing unreasonable about being generous with a first attempt to get high court review and then precluding a delayed 26(B) appeal. The two rules, taken together, balance the interests of litigants and the public.

Petitioner avers he sent his appeal papers to his family to be typed which suggests he was aware of the Supreme Court practice rule requiting typescript. Respondent asserts there is no such rule, but Petitioner's counsel quotes it. In the final analysis, it is not a procedural rule the Court enforced against Petitioner, but one he self-enforced, taking it outside the second *Maupin* factor.

The Sixth Circuit has repeatedly upheld the adequacy and independence of the 45-day time limit on 26(B) appeals. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003),

*citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

To the extent Petitioner's claims rely on an assertion of ineffective assistance of appellate counsel, either standing alone or to excuse another procedural default, they are barred by his procedural default in failing to timely appeal denial of his 26(B) application.

**Ground Five:  Insufficient Evidence of an Enterprise**

In his Fifth Ground for Relief, Petitioner claims the State produced insufficient evidence that he had engaged in a pattern of corrupt activity when it failed to prove the existence of the required "enterprise."

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

*Jackson*). This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner raised insufficiency of the evidence as his second assignment of error on direct

appeal and the Tenth District decided it as follows:

> {¶ 56} Pippins argues in his second assignment of error that the
> jury's verdict as to Count 1 was based on insufficient evidence.
> Sufficiency is:

>> "[A] term of art meaning that legal standard which is
>> applied to determine whether the case may go to the
>> jury or whether the evidence is legally sufficient to
>> support the jury verdict as a matter of law." * * * In
>> essence, sufficiency is a test of adequacy. Whether

17

the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *Black's Law Dictionary* 1433 (6th Ed. 1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 57} R.C. 2923.32(A)(1) defines engaging in a pattern of corrupt activity, in relevant part, as follows:

> No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

> "Corrupt activity" includes incidents of drug trafficking in violation of R.C. 2925.03 "when the proceeds of the violation, the payments made in the violation, * * * or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars" or when the same is true of "any combination of violations described in division (I)(2)(c) of [R.C. 2923.31]." R.C. 2923.31(I)(2)(c). A "pattern of corrupt activity" is "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).

{¶ 58} Not considering the counts we vacate in this decision, the counts on which Pippins was not found guilty by the jury, and the counts for which the trial court properly declared a mistrial due to a lack of unanimity among the jurors, Pippins was still validly convicted on significant counts of heroin trafficking, cocaine trafficking, and oxycodone trafficking. Pippins does not argue that insufficient evidence was introduced of incidents of corrupt activity

but, instead, focuses on whether the state introduced sufficient evidence of an "enterprise."

{¶ 59} An "enterprise" is defined as follows:

> "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

R.C. 2923.31(C). An enterprise which is not formally established (as, for example, an LLC or partnership would be) is an "association-in-fact" enterprise and "has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.' " *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 9, quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), citing *1173 *Boyle v. United States*, 556 U.S. 938, 948, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). For purposes of federal RICO, after which Ohio's law is modeled, *see Beverly* at ¶ 3, an "association-in-fact" enterprise has been defined to require "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* at 946, 129 S.Ct. 2237.

{¶ 60} "[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other." (Internal quotation marks omitted.) *Beverly* at ¶ 10, quoting *Boyle* at 947, 129 S.Ct. 2237; *Turkette* at 583, 101 S.Ct. 2524, citing *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13. However, "logically, evidence that proves one of the elements can sometimes prove the other, even though it doesn't necessarily do so." *Id.* at 10. Thus, depending on the facts of the case, "an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *Id.* at ¶ 13.

{¶ 61} In this case, the lead detective testified his wiretapping investigation revealed a drug-dealing organization led by Morris. As the investigation continued, the detective developed evidence that Pippins and Morris were the co-heads of the drug-dealing

organization. Pippins and Morris, he testified, were partners who
used a common supplier of heroin and cocaine. Morris confirmed
that he and Pippins were partners, that they pooled their money in
order to buy drugs, and that they split the profits of dealing evenly
between them. He explained that they had a Mexican connection
from whom they daily purchased heroin and that they also shared
customers. Morris testified another person listed in the indictment
had the role of "[f]lunkey" in the organization, cutting heroin,
cleaning up, and running errands. (Tr. at 2022.) There was also
testimony from another witness to the effect that there was no
organization and that the persons indicted were just individuals
using each other as suppliers and customers in pursuit of their
individual interests. However, sufficiency analysis is not an
opportunity to compare and weigh evidence; the question is
whether, after viewing the evidence in a light most favorable to the
prosecution, any rational trier of fact could have found the essential
elements of the crime proved beyond a reasonable doubt. *Monroe*,
105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, at ¶ 47.
Drawing all inferences in favor of the state, we find that a rational
jury could have concluded that there was a drug-dealing "enterprise"
with which Pippins was "associated" and in which he
"participate[d]." R.C. 2923.32(A)(1). For these reasons, Pippins'
second assignment of error is overruled.

*State v. Pippins, supra.*

To prevail on his Fifth Ground for Relief, Petitioner must prove this ruling is an objectively

unreasonable application of *Jackson v. Virginia, supra.* 28 U.S.C. § 2254(d)(1).  In attempting to

do so, he relies on the cross-examination of Jack Morris.  Morris was a co-defendant who had

agreed to testify against Pippins in return for a favorable plea agreement.  Petitioner does not

dispute that Morris gave the testimony summarized by the appellate court, to wit, that "he and

Pippins were partners, that they pooled their money in order to buy drugs, and that they split the

profits of dealing evenly between them. He explained that they had a Mexican connection from

whom they daily purchased heroin and that they also shared customers." *Pippins, supra,* at ¶ 61.

This confirmed the analysis offered by the lead detective from the wiretap evidence.

In contrast, the testimony from Morris on which Petitioner relies was elicited by leading

questions from Petitioner's counsel, e.g., on whether he and Pippins were an "organization" or just "miscellaneous people." (Traverse, ECF No. 19, PageID 6825).

Ohio law, like the federal RICO Act upon which it is modeled, does not require that the "enterprise" have any formal organization; an association in fact is sufficient. *Pippins, supra*, at ¶ 59, citing *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 9, quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), citing *Boyle v. United States*, 556 U.S. 938, 948, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

There was evidence from which a reasonable jury could have concluded that Pippins participated in an enterprise within the meaning of Ohio law's use of that term. A joint purpose could properly be inferred from the splitting of profits.

The Tenth District's decision on this issue is a reasonable application of *Jackson, supra*, and therefore entitled to deference under 28 U.S.C. § 2254(d)(1). Petitioner's Fifth Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

s/ ***Michael J. Merz***
United States District Judge

July 26, 2023.

21

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #