# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

KEITH J. PIPPINS, JR.,

                    Petitioner,          :    Case No. 2:21-cv-5226

      - vs -                           District Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,

                                        :
                    Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 26) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 23) which recommends that the Petition be dismissed with prejudice. District Judge Sargus has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Order, ECF No. 27).

The Petition in this case, filed with the assistance of counsel, pleads seven Grounds for Relief. The Report concluded, as Respondent had argued, that Grounds One, Two, Three, Four, Six, and Seven were procedurally defaulted. Petitioner argued in his Traverse that these defaults could all be excused by ineffective assistance of appellate counsel. The Report noted, however, that to excuse a procedural default, the claim of ineffective assistance of appellate counsel must not itself be procedurally defaulted (Report, ECF No. 23, PageID 6894, citing *Edwards v. Carpenter*, 529 U.S. 446 (2000)). Pippins' ineffective assistance of appellate counsel claim was

1

found defaulted by his failure to appeal in proper form to the Supreme Court of Ohio from denial of his 26(B) application (Report, ECF No. 23, PageID 6894).

Pippins first objects that the Report did not consider "the applicability of the exception to the exhaustion requirement found in Subsection (b)(1)(B)(ii) of 28 U.S.C. §2254" (Objections, ECF No. 26, PageID 6910).

28 U.S.C. § 2254(b) provides:

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>
> **(B)**
> **(i)** there is an absence of available State corrective process; or
>
> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.

Thus § 2254(b)(1) embodies the exhaustion doctrine and its statutory exceptions as codified by Congress in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). The Report did not find these claims were **unexhausted,** but rather that they were **procedurally defaulted**.

The exhaustion and default doctrines both advance the same comity, finality, and federalism interests. *Davila v. Davis*, 582 U.S. 521, 527 (2017), citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). However they do so in different ways. If a claim is unexhausted and there is still a state court remedy available, the habeas court must insist on exhaustion unless one of the statutory exceptions applies. Prior to the AEDPA, a habeas court was required to dismiss a "mixed" petition – one containing both exhausted and unexhausted claims. *Rose v. Lundy,* 455 U.S. 509 (1982). But the AEDPA prohibited second or successive habeas petitions, so the

Supreme Court now permits staying a habeas proceeding while exhaustion is accomplished. *Rhines v. Weber*, 544 U.S. 269 (2005).

Procedural default doctrine speaks to a different situation, to wit, where there was an available state court remedy but the habeas petitioner did not fairly present the claim to the court authorized to grant relief and state law no longer authorizes presenting the claim. 28 U.S.C. § 2254(b)(1)(B)(2), the statute on which Petitioner relies, speaks to exceptions to the exhaustion doctrine and not procedural default. The statute does not purport to excuse procedural default and is therefore not relevant.

To determine if a procedural default occurred, courts in the Sixth Circuit apply the four-step analysis of *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986);

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

There are several layers of procedural default involved in this case and the *Maupin* analysis must be applied to each. First of all, Respondent asserts that Grounds for Relief One, Two, Six,

and Seven, were never presented to the Ohio courts. As to Grounds Two, Three, and Four, Respondent asserted they were defaulted for failure to make a contemporaneous objection. In his Traverse Petitioner essentially concedes the first three steps of the *Maupin* analysis by not challenging the existence of the relevant procedural rule and his own failure to abide by it by making a contemporaneous objection or assigning a claim as error on direct appeal[1].

As noted in the Report, the adequacy and independence of Ohio's contemporaneous objection rule has been repeatedly upheld by the Sixth Circuit. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Ohio courts also hold that constitutional errors which can be adjudicated on the direct appeal record must be raised in that appeal or be barred by *res judicata*. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), has been repeatedly held by the Sixth Circuit to be an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir.

---

[1] "The record discloses that Pippins' trial attorney failed to preserve certain issues for review by pretrial motion and/or contemporaneous objection. His appellate attorney failed to present certain constitutional claims in the direct appeal." (Traverse, ECF No. 19, PageID 6803).

2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6ᵗʰ Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Essentially conceding that these defaults occurred and that the underlying state procedural rules are adequate and independent, Petitioner argues these defaults can be excused by the ineffective assistance of trial counsel for not objecting and ineffective assistance of his appellate counsel on direct appeal for not raising both the ineffective assistance of trial counsel for not objecting and the alleged errors which could be appealed without a contemporaneous objection. The Report accepts this proposition generally but notes that, to be available for this purpose, the ineffective assistance of appellate counsel claim must itself not be procedurally defaulted.[2]

The Report concluded that the purportedly excusing ineffective assistance of appellate counsel claim was itself defaulted by failure to timely appeal from denial of the 26(B) application to the Supreme Court of Ohio. The State Court Record as filed does not show any attempt by Pippins to appeal to the Supreme Court of Ohio, timely or untimely. But Pippins was represented in the 26(B) proceedings by the same counsel who represents him in these proceedings and who provides evidence regarding the failed appeal attempts (See State Court Record, ECF No. 9, Ex. 24, PageID 402-03). Counsel filed the 26(B) Application on October 1, 2020, the day before the ninety-day deadline for filing would have expired, given the tolling effect of Ohio Supreme Court orders relating to the COVID-19 pandemic. In explaining why the 26(B) application was timely, counsel wrote:

> Pippins is not a lawyer and was not aware of the remedy of an application for reopening, the time limit for filing an application, or the existence of grounds to request a reopening of his appeal. Pippins first became aware of this remedy and the potential grounds

---

[2] "But to serve as excusing cause, the ineffectiveness claims must themselves be successfully presented to the state courts just like any other constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000)." (Report, ECF No. 23, PageID 6894).

for reopening after his sister consulted with an attorney regarding the possibility of pursuing habeas corpus relief in federal court.

She retained undersigned counsel for Pippins on September 11, 2020 to prepare and file an application for reopening after being informed that a prisoner must exhaust his available state court remedies with respect to any claims he wishes to raise before seeking relief in the federal courts, and that grounds exist for filing an application for reopening. Counsel exercised due diligence in preparing this application for reopening.

*Id.* at PageID 399-400.

Counsel apparently was **not** retained for the intermediate but required step of appealing to the Supreme Court of Ohio;  he represents in the Petition that Pippins "lacked the financial resources to retain counsel to file an appeal for him." (Petition, ECF No. 1, PageID 6).  Pippins was proceeding *pro se* at that stage and sent his paperwork to his family for typing.  When it was returned by them, he sent it to the Supreme Court of Ohio where it arrived on February 16, 2021, the very last day of the filing period.  At that point the Clerk enforced against him the Supreme Court rule that a Notice of Appeal had to be accompanied by a date-stamped copy of the judgment being appealed and the opinion ordering that judgment.  (See Letter, Attachment A to Petition, ECF No. 1, PageID 9).  Pippins knew beforehand of that requirement and had requested the prison staff to make copies, but they had not done so by the time he calculated he needed to mail to the Supreme Court.

The Clerk also informed Pippins of what to do to seek a delayed appeal.  *Id.* That advice was obviously *pro forma* because when Pippins complied with it, his delayed appeal filing was rejected by the Clerk because Ohio Supreme Court rules do not allow any delayed appeals from denials of 26(B) applications (See Letter, Attachment B to Petition, ECF No. 1, PageID 10).

Petitioner attacks the adequacy, within the meaning of *Maupin*, of the Supreme Court refusal to consider delayed 26(B) appeals as compared with its rather generous allowance of

delayed direct appeals.  The Report concluded these two rules, taken together, appropriately balance the competing public interests in thoroughness of review of criminal convictions and the finality of those convictions (Report, ECF No. 23, PageID 6897).  Pippins objects that "The report does not cite any authority explicitly supporting this statement." (ECF No. 26, PageID 6911).

The Magistrate Judge is unaware of any authority expressly finding these two state procedural rules to be adequate when compared with each other, but is also unaware of any authority holding that the adequacy of any state procedural rule is to be measured comparatively.

The Report does cite *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004) for the proposition that the forty-five day time limit on appeal to the Ohio Supreme Court prescribed by S. Ct. Prac. R. 7.01(A)(1)(a)(i) is an adequate and independent state ground of decision.  *Id.* at 497.  Pippins objects that *Bonilla* is inapposite because it involved a direct appeal which allowed the petitioner to get a delayed appeal if he could show good cause (ECF No. 26, PageID 6912).  If not directly in point, *Bonilla* is very instructive because it lists various excuses for late filing which Bonilla gave and the Sixth Circuit found were inadequate -- lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison.  In other words, if Pippins had been able to offer the Ohio Supreme Court the reasons for delay he now asserts – a need to have his family do his typing, a need to rely on prison staff for copies, difficulties with the mail – seem far less persuasive then Bonilla's.

Pippins correctly notes that the other cases cited with *Bonilla*[3] uphold the adequacy and independence of the ninety-day time limit on filing a 26(B) application rather than the forty-five day limit on appealing from a denial of such an application.  He asserts the cited cases are

---

[3] *Parker v. Bagley*, 543 F.3d 859 (6th Cir. 2008); *Scuba v Brigano,* 527 F.3d 479, 488 (6th Cir. 2007); *Monzo v. Edwards,* 281 F.3d 568 (6th Cir. 2002); and *Tolliver v. Sheets,* 594 F.3d 900 (6th Cir. 2010), citing *Rideau v. Russell,* 2009 WL 2586439 (6th Cir. 2009).

inapposite because the ninety-day rule allows good cause exceptions.

Instead Pippins asserts the Court should be guided by *Smart v. Scully*, 787 F.2d 816, 820 (2d Cir. 1986). In that case the Second Circuit held that failure to support a motion to withdraw a guilty plea with a sworn statement of relevant facts did not constitute a procedural default at all, despite a New York statute requiring the sworn statement. Pippins cited *Smart* in his Traverse and objects that the Report does not discuss it (Objections, ECF No. 26, PageID 6914). With respect, that is not a valid basis for an objection; a Magistrate Judge's report is not "contrary to law" because it fails to discuss every case cited by the parties. There simply is not enough judicial time to do so consistent with the obligation to provide timely decisions and the constraints of the Civil Justice Reform Act.

In this particular instance, the Magistrate Judge notes that *Smart* is not binding precedent because it was decided by the Second Circuit more than thirty years ago and Pippins provides no reference to cases in the Sixth Circuit citing *Smart* approvingly. It seems unlikely the Sixth Circuit would follow *Smart*, given the multiple instances in which it has upheld rigid (i.e. no exceptions) time limits as adequate and independent grounds.

Additionally, Pippins has cited no authority for the general proposition that a time limit rule's provisions for exceptions implies that any other time-limit rule the State imposes must also be subject to exceptions. In general a state procedural ground will be found inadequate only when the state rule "force[s] resort to an arid ritual of meaningless form." *Staub v. City of Baxley*, 355 U.S. 313, 320(1958). In general "denying a postconviction motion or appeal based on untimeliness is an independent and adequate state procedural ground." *Walker v. Martin,* 562 U.S. 307, 310-11 (2011); *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).

The Supreme Court of Ohio processes more than 1,500 requested appeals each year[4].  Most of the court's jurisdiction is effectively discretionary with each of the seven Justices having authority to weigh in on whether an appeal should be allowed.  Pippins has produced a long list of direct appeal cases in which leave to file a delayed appeal was granted (Objections, ECF No. 26, PageID 6917-18).  As he notes, the Supreme Court grants delayed appeals by form entry without any published opinion.  *Id.* at note 2.  Pippins has extracted the reasons given for allowing the delayed appeal from the motions appellants filed which comprise over thirty pages of attachments to his Traverse.

The Supreme Court's denial of exercise of its appellate jurisdiction in felony cases is also done by one-sentence form entry signed by the Chief Justice (See State Court Record, ECF No. 9, Ex. 23 which is the typical form for such denials).  These practices bespeak practical delegation of a great deal of the court's discretion to non-Justices, whether law clerks or staff attorneys or non-lawyers.  A rule which allows no discretion (i.e. no delayed appeals in 26(B) cases) obviously requires less investment of judicial resources than a rule which retains discretion.  Yet Pippins position is that the denial of delayed appeals in 26(B) cases is "inadequate" as a matter of law because it allows no discretion.  And if this Court adopted that position for Pippins, it would as a matter of equal justice have to adopt it for all untimely 26(B) appeals.[5]

In sum, Pippins has not shown that any state supreme court rule of practice which does not allow exceptions is inadequate because other arguably parallel rules do allow exceptions.[6]

---

[4] Supreme Court of Ohio Case Statistics at https://www.supremecourt.ohio.gov › Clerk; visited 09/21/2023.
[5] Whether the Second Circuit allows "do overs" in all cases where a habeas petitioner fails to have his or her statement of facts notarized as in *Smart* is unknown.
[6] The Magistrate Judge emphasizes that Pippins has presented no evidence and has indeed not suggested that the denial of delayed appeals for 26(B) cases is administered in a discriminatory manner, e.g., white men with retained counsel get appeals and others do not.  A rule neutral on its face but administered discriminatorily would present a very different case.

Therefore Pippins' Objections to the procedural default analysis in the Report should be overruled.


**Ground Five:  Insufficient Evidence**


In his Fifth Ground for Relief, Pippins argues his conviction for engaging in a pattern of corrupt activity is supported by insufficient evidence on the "enterprise" element.  Respondent conceded this Ground for Relief was preserved for habeas review and relied on the decision of the Tenth District Court of Appeals on direct appeal as being a reasonable application of the governing Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979).  The Report agrees (ECF No. 23, PageID 6904).

Pippins objects, but relies on the same argument he made to the Tenth District.  No further analysis beyond that made in the Report would be useful.


**Certificate of Appealability**


The Rules Governing § 2254 Proceedings require that a district court, upon entering judgment in a habeas case, must grant or deny a certificate of appealability.  For that reason the undersigned regularly includes a recommendation on that issue in a report and recommendation. The Report recommends that a certificate be denied (ECF No. 23, PageID 6904).

Pippins concedes that the Sixth Circuit has

> not issued a decision addressing the adequacy of an Ohio procedural rule that permits a prisoner to file a motion for a delayed appeal (to cure a technical error in his paperwork) if he is appealing from a judgment of a court of appeals in a direct appeal, but that denies the same opportunity to a prisoner who is appealing a judgment denying an application to reopen a direct appeal.

(Objections, ECF No. 26, PageID 6923).  He notes the Report's rationale for finding the delayed

appeal prohibition on 26(B) cases to be adequate, but argues that rationale ignores the Sixth

Amendment guarantee of effective assistance of counsel on direct appeal.  *Id.* He then asserts:

> Surely reasonable jurists could debate the question of whether Ohio's practice of not allowing someone in Pippins' position to use the remedy of a delayed appeal to cure a technical error in his "first attempt" to obtain state supreme court review of his Sixth Amendment claim is a process that is "ineffective to protect the rights of the applicant."

(Objections, ECF No. 26, PageID 6924).  This argument is in terms of the statutory exception to

the exhaustion doctrine.  As pointed out above, those exceptions do not apply to procedural default.

To obtain a certificate of appealability, a petitioner must show at least that jurists of reason

would find it debatable whether the petition states a valid claim of denial of a constitutional right.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  That is, it must find that reasonable jurists would

find the district court's assessment of the petitioner's constitutional claims debatable or wrong or

that they warrant encouragement to proceed further.  *Banks v. Dretke*, 540 U.S. 668, 705 (2004);

*Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017).

> In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect. Crucially, in applying this standard, a court must consider not only the merits of the underlying constitutional claim but also any procedural barriers to relief. *Buck v. Davis,* 137 S. Ct. 759, 777, 197 L. Ed. 2d 1 (2017); *Slack [v. McDaniel]*, 529 U.S. at 484-85; see also *Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017). To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable.

*Moody v. United States*, 958 F.3d 485 (6th Cir.  2020).

> [T]he standards for a certificate are no mere technicality. Quite the contrary. By authorizing extra appeals, improper certificates add to the "profound societal costs" of habeas litigation while sapping limited public resources. *Calderon v. Thompson,* 523 U.S. 538, 554, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) (quoting *Smith v. Murray,*

11

> 477 U.S. 527, 539, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)). For one, they divert our time and attention from the cases Congress actually meant us to hear, often leading us to appoint counsel and schedule argument in cases that we later find to be insubstantial. For another, they require state and federal government attorneys to devote their time and attention to defending appeals that should never have existed. Plus, they may even harm those habeas petitioners whose claims really do merit an appeal because it could "prejudice the occasional meritorious [claim] to be buried in a flood of worthless ones." *Brown v. Allen*, 344 U.S. 443, 537, 73 S. Ct. 397, 97 L. Ed. 469 (1953) (Jackson, J., concurring). In short, it's critical that courts follow the rules Congress set.

*Moody v. United States,* 958 F.3d 485 (6th Cir. 2020).

Pippins has not cited any case in which a court found a particular procedural rule was inadequate because a parallel rule was more generous.  The Second Circuit in *Smart* found a New York rule was being too rigidly enforced, but not by comparing it with another more generous rule.  Nor has Pippins cited any decision in which a judge has found the denial of delayed appeals in 26(B) cases, standing alone, is inadequate.  The best test of whether reasonable jurists would disagree is whether any jurist does disagree and that has not been shown.  The Magistrate Judge again recommends a certificate of appealability be denied.  If the Sixth Circuit believes Pippins deserved encouragement to proceed, it has the original power to grant a certificate.

September 22, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure

to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge